**Slip Op. 13-13**

UNITED STATES COURT OF INTERNATIONAL TRADE

---

THE POMEROY COLLECTION, LTD.,    :

               *Plaintiff*,   :

          v.         :       Consol. Court No. 02-00150

UNITED STATES,        :

            *Defendant*. :

---

[Plaintiff's Motion for Summary Judgment is denied; Defendant's Cross-Motion for Summary Judgment is granted]

Dated: January 28, 2013

    Peter J. Fitch, Fitch, King, LLC, of Moonachie, New Jersey, argued for Plaintiff.

    Beverly A. Farrell, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, New York, argued for Defendant. With her on the brief were Tony West, Assistant Attorney General, and Barbara S. Williams, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Beth C. Brotman, Office of the Assistant Chief Counsel, International Trade Litigation, Bureau of Customs and Border Protection, U.S. Department of Homeland Security, of New York, New York.

# OPINION

RIDGWAY, Judge:

    In this consolidated action,[1] plaintiff The Pomeroy Collection, Ltd. ("Pomeroy") challenges

---

    [1]Court No. 01-00784 and Court No. 01-01011 were consolidated into the present action based in part on the parties' representation that consolidation will help the parties "resolve all of the remaining issues existing in the Pomeroy cases." *See* Consent Motion to Consolidate (Feb. 27, 2009); *see also* Order (March 4, 2009). This action is also designated a test case, with more than 50 actions currently suspended under it. *See* Order (March 17, 2005) (designating action as test case).

the decision of the United States Customs Service[2] denying Pomeroy's protests concerning the tariff classification of certain merchandise imported from Mexico in 1999.[3]

As discussed below, in the course of this litigation the parties have reached agreement on the classification of most of the merchandise identified in Pomeroy's Consolidated Amended Complaint, with virtually all issues resolved in Pomeroy's favor. *See* section I, *infra*. Now pending before the Court are the parties' cross-motions for summary judgment concerning the classification of the 16 articles that remain in dispute, which can be grouped into three basic categories of merchandise – "Pillar Plates," "Floor Articles," and "Wall Articles."

Pomeroy contends that all 16 remaining articles are properly classifiable as "Lamps and lighting fittings" under subheading 9405.50.40 of the Harmonized Tariff Schedule of the United States ("HTSUS") (1999),[4] and are thus duty-free. *See generally* Plaintiff's Brief in Support of Its Motion for Summary Judgment ("Pl.'s Brief") at 3, 6, 21-24; Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment ("Pl.'s Reply Brief") at 1-7, 25. In the alternative, Pomeroy

---

[2]The U.S. Customs Service – formerly part of the U.S. Department of Treasury – was transferred to the U.S. Department of Homeland Security as part of the Homeland Security Act of 2002. *See* Bull v. United States, 479 F.3d 1365, 1368 n.1 (Fed. Cir. 2007). The agency is now commonly known as U.S. Customs and Border Protection, and is referred to as "Customs" herein.

[3]The contested items are listed in boldface type in schedules attached to Pomeroy's pleadings and briefs. The most up-to-date schedule – and the one that will be referenced hereinafter – is the schedule appended to Pomeroy's Reply Brief. *See* Pl.'s Reply Brief at attached Schedule ("Pl.'s Final Schedule").

[4]All citations to the HTSUS herein are to the 1999 edition.

All tariff provisions discussed in relation to both the classified and claimed provisions at issue here are properly preceded by the prefix "MX," to indicate that the goods qualify for the duty rate applicable to products of Mexico. However, the prefix is otherwise irrelevant to the analysis here, and is omitted throughout the opinion.

argues that the Floor Articles and the Wall Articles are classifiable as "Other furniture and parts thereof" under either subheading 9403.80.60 or subheading 9403.20.10, and are thus duty-free. *See generally* Pl.'s Reply Brief at 16-24, 25.

The Government maintains that Customs properly classified the contested merchandise as decorative glass articles under various subheadings of HTSUS heading 7013 (which covers "Glassware of a kind used for . . . indoor decoration or similar purposes") – specifically, subheadings 7013.39.50, 7013.99.50, 7013.99.80, and 7013.99.90 (depending on the value of the merchandise) – and assessed duties at rates ranging from 4.3% to 22.8% *ad valorem*. *See generally* Defendant's Cross-Motion for Summary Judgment ("Def.'s Brief") at 6-7, 16-20, 20-25; Defendant's Reply Memorandum of Law in Support of Its Cross-Motion for Summary Judgment and in Response to Plaintiff's Response to Our Cross-Motion ("Def.'s Reply Brief") at 1, 4-5, 8-9.

Jurisdiction lies under 28 U.S.C. § 1581(a) (1994).[5]  As discussed below, all items of merchandise that remain in dispute are properly classified as decorative glass articles under the specified subheadings of HTSUS heading 7013.  Pomeroy's Motion for Summary Judgment is therefore denied, and the Government's Cross-Motion for Summary Judgment is granted.[6]

## I. <u>Background</u>

The parties here are no strangers to the Court.  Numerous articles imported by Pomeroy with similarities to the merchandise at issue here have been the subject of classification litigation over

---

[5]All citations to statutes herein (other than citations to the HTSUS) are to the 1994 edition of the United States Code.

[6]Judgment also will be entered as to the classification of all those articles of merchandise on which the parties have reached agreement.

the past decade.  *See generally* The Pomeroy Collection, Inc. v. United States, 26 CIT 624, 246 F.

Supp. 2d 1286 (2002) ("Pomeroy I") (finding glass vessels cradled by wrought iron pedestals and

lacking candles to be classifiable as decorative glass under heading 7013), *aff'd*, 336 F.3d 1370

(Fed. Cir. 2003); The Pomeroy Collection, Ltd. v. United States, 32 CIT 526, 559 F. Supp. 2d 1374

(2008) ("Pomeroy II") (finding four pieces of merchandise, all of which included candles, to be

classifiable as "Lamps and lighting fittings" under heading 9405); The Pomeroy Collection, Ltd. v.

United States, 35 CIT ____, 783 F. Supp. 2d 1257 (2011) ("Pomeroy III") (classifying somewhat

cylindrical, vase-shaped glass structure with opening at top as "part" of lamp under heading 9405).

Indeed, as discussed in greater detail below, one of the Floor Articles at issue here – the

Medium Romano Floor Lamp – is identical to the merchandise which was the subject of Pomeroy

I.  *See* Pomeroy I, 26 CIT at 634, 246 F. Supp. 2d at 1287-88 (describing Medium Romano Floor

Lamp Rustic in terms similar to Medium Romano Floor Lamp here, and finding it classifiable as

glassware under heading 7013); Pl.'s Brief at 9 n.2 (acknowledging that "[o]ne size of the Romano

Floor Candles was the subject of [Pomeroy I]"); Def.'s Brief at 20; Pomeroy I, 26 CIT at 634, 246

F. Supp. 2d at 1287-88 (describing Medium Romano Floor Lamp Rustic in terms similar to Medium

Romano Floor Lamp here and finding it to be classifiable as decorative glass under heading 7013).

This latest chapter of the saga – the case at bar – has been the most extensive to date.  The

various protests subsumed in the three now-consolidated actions involved approximately 80 entries

of merchandise and at least 90 distinct articles in dispute.

After Court No. 01-00784 and Court No. 01-01011 were consolidated into this action,

Pomeroy filed a Consolidated Amended Complaint, which reflected the fact that the parties had

reached agreement on Pomeroy's preferred classification of more than 60 items up to that point in time. *See* Consolidated Amended Complaint ("Consol. Amended Complaint") at attached Schedule (using boldface type to identify items then in dispute, and regular type to identify items as to which classification had been agreed). The Consolidated Amended Complaint narrowed Pomeroy's challenge, focusing on 23 assorted articles of different types and sizes then still in dispute, which the Consolidated Amended Complaint divided into six different "groups" of merchandise. *See* Consol. Amended Complaint ¶ 6.

Specifically, "Group I," which the Consolidated Amended Complaint referred to as "Floor Lighting Articles," included Pomeroy's "Stix Floor Candle" (sizes small, medium, and large), "Basics Floor Candle" (sizes small, medium, and large), and "Romano Floor Lamp[]" (sizes medium and large). *See* Consol. Amended Complaint ¶ 6. "Group II," which the Consolidated Amended Complaint referred to as "Other Floor Goods," included Pomeroy's "Talon Floor Vase[]" (sizes small and large) and "Asiatica Floor Vase." *See* Consol. Amended Complaint ¶ 6. "Group III," which the Consolidated Amended Complaint referred to as "Wall Lighting Goods," included Pomeroy's "Lattice Wall Lighting" and "Romano Wall Lighting." *See* Consol. Amended Complaint ¶ 6. "Group IV," which the Consolidated Amended Complaint referred to as "Candle Goods," included Pomeroy's "Metropol Pillar Holder w/6" candle" and "Metropol Pillar Candle Glass w/candle." *See* Consol. Amended Complaint ¶ 6. "Group V," which the Consolidated Amended Complaint referred to as "Metropol Candle Holders," included two different model numbers of Pomeroy's "Metropol Pillar Holder," imported without candles. *See* Consol. Amended Complaint ¶¶ 6, 36-38. And "Group VI," which the Consolidated Amended Complaint referred to as "Other

Candle Holders," included six assorted styles/sizes of Pomeroy's "Glass Pillar Plates." *See* Consol. Amended Complaint ¶ 6.

Since the filing of the Pomeroy's Consolidated Amended Complaint, the parties have further narrowed their differences. Specifically, the parties have now agreed that – as Pomeroy has maintained – the "Metropol Pillar Holder w/6" candle" and the "Metropol Pillar Candle Glass w/candle" are properly classifiable as "Candles, tapers and the like," under subheading 3406.00.00, and are therefore duty-free. *See* Defendant's Response to Plaintiff's Statement of Material Facts As To Which No Genuine Issue Exists ("Def.'s Response to Pl.'s Statement of Facts") ¶¶ 3-4 (noting parties' agreement that two Metropol articles imported with candles (article # 687068 and article # 641053) should be classified under subheading 3406.00.00). Similarly, the parties have now agreed that – as Pomeroy has maintained – the two other Metropol articles (*i.e.*, article # 687051 and article # 687037), which were imported without candles, should be classified as "Lamps and lighting fittings . . . and parts thereof" under subheading 9405.50.40, and thus are also duty-free. *See* Def.'s Response to Pl.'s Statement of Facts ¶¶ 3-4 (noting parties' agreement that two other Metropol articles, imported without candles, should be classified under subheading 9405.50.40). In addition, Pomeroy has voluntarily withdrawn its claims as to its "Talon Floor Vases" and its "Asiatica Floor Vase." *See* Pl.'s Brief at 2 n.1.

As a result, of the dozens of items originally at issue in this action, a total of 16 now remain in dispute. Those 16 items are described below, and are grouped for purposes of analysis into three categories of merchandise – the "Pillar Plates," the "Floor Articles," and the "Wall Articles."

Pomeroy contends that all 16 articles are properly classifiable under subheading 9405.50.40,

HTSUS, "Lamps and lighting fittings including searchlights and spotlights and parts thereof, not

elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a

permanently fixed light source, and parts thereof not elsewhere specified or included: Non-electrical

lamps and lighting fittings: Other: Other," and thus should be duty-free.  *See* Pl.'s Brief at 3, 6, 21-

24; Subheading 9405.50.40, HTSUS.  In the alternative, Pomeroy contends that the Floor Articles

and the Wall Articles are properly classifiable under subheading 9403.80.60, as "Other furniture and

parts thereof: Furniture of other materials, including cane, osier, bamboo or similar materials:

Other."  *See* Pl.'s Brief at 16-24, 25; Subheading 9403.80.60, HTSUS.[7]

## A.  Pillar Plates

The Pillar Plates at issue are slightly concave glass plates, each with three small rounded feet

on the bottom.  *See* Def.'s Brief at 5; Pl.'s Brief at Exhs. 13A-D (samples of frosted and clear

models of medium and large Pillar Plates).  Three different sizes of plates were imported – small

(5.5 inches in diameter), medium (7 inches in diameter), and large (9.5 inches in diameter); and each

size was imported in two colors (*i.e.*, clear glass and white frosted glass).  *See* Def.'s Brief at 5; Pl.'s

Brief at Exhs. 13A-D (samples of Pillar Plates).[8]

---

[7]As an additional alternative theory, Pomeroy claimed in its Consolidated Amended Complaint that the Floor Articles and Wall Articles were properly classifiable as statuettes and other ornaments of base metal under subheading 8306.29.00, a duty-free provision.  *See* Consol. Amended Complaint ¶¶ 22-26.  However, Pomeroy has not briefed that claim, and has therefore waived it.

[8]The Pillar Plates include the Small Clear Glass Pillar Plate (article # 687402), the Medium Clear Glass Pillar Plate (article # 687419), the Large Clear Glass Pillar Plate (article # 687426), the Small Frosted Glass Pillar Plate (article # 687457), the Medium Frosted Glass Pillar Plate (article # 687464), and the Large Frosted Glass Pillar Plate (article # 687471).  *See* Pl.'s Final Schedule; First Pomeroy Affidavit ¶ 16.

Pomeroy alleges that the Pillar Plates were designed as candleholders.  *See* Pl.'s Brief at 20 ("The 'pillar plates' were so named because they are platforms (or plates) for holding arrangements of pillar candles.").   And Pomeroy emphasizes that the boxes in which the Pillar Plates were imported featured photographs depicting candles inserted into the merchandise.  *See* Pl.'s Brief at Exhs. 13A-D (samples of Pillar Plates, with boxes); Pl.'s Brief at 20-21.  However, the Pillar Plates were not imported with candles, and – as Pomeroy itself concedes – can readily be used to hold a wide range of items, including, for example, "colored glass, fruit, or perhaps a wine bottle."  *See* Pl.'s Brief at 20 (noting that candles were not included with Pillar Plates); Plaintiff's Response to Defendant's Statement of Material Facts as to Which No Genuine Issue Exists ("Pl.'s Response to Def.'s Statement of Facts") ¶ 10; *see also* Defendant's Statement of Material Facts as to Which No Genuine Issue Exists ("Def.'s Statement of Facts") ¶ 10 (stating that Pillar Plates "could be used to hold . . . potpourri, flowers, sand, gravel, stones, pebbles, colored glass, fruit, wine bottles").

Customs classified virtually all of the Pillar Plates as decorative glass articles under HTSUS subheading 7013.99.50, and assessed duties at the rate of 18%.  *See* Pl.'s Brief at 2.[9]  However, some entries of one type of Pillar Plate (*i.e.*, the large frosted glass Pillar Plate) were instead classified under subheading 7013.39.50 or subheading 7013.99.80, with duties assessed at the rate of 9%.  *See* Pl.'s Reply Brief at attached Schedule ("Pl.'s Final Schedule").[10]

---

[9]Specifically, subheading 7013.99.50 covers "Glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes (other than that of heading 7010 or 7018): Other glassware: Other: Other: Other: Valued over $0.30 but not over $3 each."  *See* Subheading 7013.99.50, HTSUS.

[10]Subheading 7013.39.50 covers "Glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes (other than that of heading 7010 or 7018): Glassware of a kind used for table (other than drinking glasses) or kitchen purposes other than that of glass-ceramics:

## B. Floor Articles

The Floor Articles in dispute include three styles of merchandise – Pomeroy's "Stix Floor Candle" (sizes small, medium, and large), its "Basics Floor Candle" (sizes small, medium, and large), and its "Romano Floor Lamp" (sizes medium and large).  *See*, *e.g.*, Pl.'s Brief at Exhs. 2 (Medium Basics Floor Candle), 4 (Small Romano Floor Candle), 5 (photograph of three Stix Floor Candles).[11]  Each of the Floor Articles consists of two separate components – a glass vessel with a rounded bottom, and a wrought iron pedestal (*i.e.*, stand).  *See* Pl.'s Brief at Exhs. 2-6 (physical samples and photographs of Floor Articles).  Each glass vessel has a rounded bottom that prevents it from standing on its own (unless it is turned upside down) or from functioning in its intended manner without the pedestal, which is specifically designed to cradle (that is, to hold and support) the glass vessel.  *See* Pl.'s Brief at Exhs. 2-6 (physical samples and photographs of Floor Articles).

The pedestals range from in height from approximately 16 inches to approximately 42 inches, depending on the model and size of the Floor Article.  *See* Pl.'s Brief at Exh. 7 (Pomeroy

---

Other: Other: Valued over $3 each: Other: Valued over $3 but not over $5 each."  *See* Subheading 7013.39.50, HTSUS.

Subheading 7013.99.80 covers "Glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes (other than that of heading 7010 or 7018): Other glassware: Other: Other: Other: Valued over $3 each: Other: Valued over $3 but not over $5 each."  *See* Subheading 7013.99.80, HTSUS.

[11]The Floor Articles include the Small Stix Floor Candle (article # 574962), the Medium Stix Floor Candle (article # 574979 and article # 575914), the Large Stix Floor Candle (article # 574986), the Small Basics Floor Candle (article # 840999), the Medium Basics Floor Candle (article # 841996), the Large Floor Candle (article # 842016), the Medium Romano Floor Lamp (article # 856013 and article # 856037), and the Large Romano Floor Lamp (article # 857010).  *See* Pl.'s Final Schedule; First Pomeroy Affidavit ¶¶ 4-6.

price list with descriptions of merchandise).  The glass vessels used in the Basics and Romano models are identical, while the glass vessel used in the Stix model is more shallow with a somewhat wider brim at the top.  *See* Pl.'s Brief at Exhs. 2-6 (samples and photographs showing differences among models of Floor Articles).  Specifically, the glass vessel for the Basics and Romano models is approximately nine inches tall, with an opening that is approximately seven inches wide and a rim approximately two inches wide.  *See* Pl.'s Brief at Exh. 2 (Medium Basics Floor Candle, including vessel); Def.'s Brief at 3.   Similarly, the glass vessels included with the Stix models are approximately 8.5 inches tall, with an opening that is approximately 7.8 inches wide, and a brim that appears to be a few inches wider than that in the other models.  *See* Pl.'s Brief at Exh. 6 (photograph of Stix Floor Candles); Def.'s Brief at 3-4.[12]

Pomeroy asserts that the Floor Articles were "all designed . . . as candle holders."  See Pl.'s Brief at 9.  However, candles were not included with any of the Floor Articles as imported.  *See* Pl.'s Brief at 8; Def.'s Brief at 18.  Moreover, there is nothing to limit the use of any of the Floor Articles to holding a candle.  As even Pomeroy admits, any of the Floor Articles "CAN be used to hold a variety of articles other than candles."  Pl.'s Response to Def.'s Statement of Facts ¶ 9; *see also* Def.'s Statement of Facts ¶ 9 (same).

Customs classified the eight Floor Articles as "Glassware of a kind used for . . . indoor decoration or similar purposes" under subheading 7013.99.90, assessing duties at the rate of 4.3%.

---

[12]No samples of the Stix models were provided.  However, as the Government notes, the dimensions of the glass vessel included with the Stix models can be extrapolated from a photograph that Pomeroy provided.  *See* Pl.'s Brief at Exh. 6; Def.'s Brief at 3-4.

*See* Pl.'s Final Schedule.[13]

### C.  Wall Articles

The Wall Articles at issue include two different models of merchandise – Pomeroy's Romano Wall Lighting and its Lattice Wall Lighting, each of which is comprised of a glass vessel and an iron wall mounting.  *See* Pl.'s Brief at Exhs. 8-9 (boxes in which Wall Articles were imported, featuring photographs of articles).

No samples of the articles were made available, and their exact dimensions are unclear.  Pl.'s Brief at 17.  However, the depictions on the boxes indicate that the articles' iron wall mounting supports a glass vessel with a rounded bottom.  *See* Pl.'s Brief at Exh. 8 (box in which Lattice Wall Lighting was imported); Pl.'s Brief at Exh. 9 (box in which Romano Wall Lighting was imported). The glass vessel appears somewhat smaller than – but roughly the same shape as – the vessels used in the Floor Articles.  *Compare* Pl.'s Brief at Exh. 3 (photograph of three Basics Floor Candles) *and* Pl.'s Brief at Exhs. 8-9 (boxes in which Wall Articles were imported).

Pomeroy states that the Wall Articles "were always advertised and sold as candle holders." Pl.'s Brief at 18.  And Pomeroy emphasizes that the boxes in which the Wall Articles were imported featured photographs depicting the merchandise with candles inserted into the vessels.  *See* Pl.'s Brief at 17-18.  However, neither of the Wall Articles was imported with candles.  Pl.'s Brief at 17; Def.'s Brief at 4-5, 19.  Indeed, as Pomeroy concedes, the Wall Articles can be used to hold a wide

---

[13]Subheading 7013.99.90 covers "Glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes (other than that of heading 7010 or 7018): Other glassware: Other:  Other: Other: Valued over $3 each: Other: Valued over $5 each."  *See* Subheading 7013.99.90, HTSUS.

variety of items other than candles, including "potpourri, flowers, sand, gravel, stones, pebbles, colored glass, fruit, wine bottles" and more.  *See* Def.'s Statement of Facts ¶ 10 (stating that Wall Articles "could be used to hold . . . potpourri, flowers, sand, gravel, stones, pebbles, colored glass, fruit, wine bottles"); Pl.'s Response to Def.'s Statement of Facts ¶ 10 (admitting that the Wall Articles "COULD be so used").

Customs classified both models of Wall Articles as decorative glass articles under subheading 7013.99.50, and assessed duties at the rate of 18%.  *See* Pl.'s Final Schedule.[14]

## II.  Standard of Review

Under USCIT Rule 56, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  USCIT R. 56(a). Customs' classification decisions are reviewed *de novo*, through a two-step analysis.  *See* 28 U.S.C. § 2640; Faus Group, Inc. v. United States, 581 F.3d 1369, 1371-72 (Fed. Cir. 2009).  The first step of the analysis "addresses the proper meaning of the relevant tariff provisions, which is a question of law.  The second step involves determining whether the merchandise at issue falls within a particular tariff provision as construed."  *See* Faus Group, 581 F.3d at 1371-72 (*citing* Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998)).

Interpretation of the relevant tariff headings is a question of law, while application of the terms to the merchandise is a question of fact.  *See* Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1364-65 (Fed. Cir. 1998) (citation omitted).  Summary judgment is thus appropriate where – as here – the nature of the merchandise is not in question, and the sole issue is its proper

---

[14]The complete text of subheading 7013.99.50 is set forth in footnote 9, above.

classification.  *See* <u>Bausch & Lomb</u>, 148 F.3d at 1365 (citation omitted) (explaining that summary judgment is appropriate in customs classification cases "when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is").

In the case at bar, although the parties argue for classification under different headings of the HTSUS, there are no disputes of material fact.  The question presented is limited to the legal issue of the proper classification of the merchandise.[15]  This matter is therefore ripe for summary judgment.

## III. <u>Analysis</u>

The proper tariff classification of all merchandise imported into the United States is governed by the General Rules of Interpretation ("GRIs").  The GRIs provide a framework for classification under the HTSUS, and are to be applied in sequential order.  *See, e.g.*, <u>North Am. Processing Co. v. United States</u>, 236 F.3d 695, 698 (Fed. Cir. 2001); <u>Orlando Food</u>, 140 F.3d at 1439-40.

GRI 1 provides for classification "according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to [GRIs 2 through 6]."  GRI 1, HTSUS.  Thus, the first step in any classification analysis is to determine whether the headings and notes require a particular classification.

---

[15]The parties argue over whether Customs' classifications of the merchandise here at issue are entitled to a statutory presumption of correctness.  *See* Def.'s Brief at 9-10; Pl.'s Reply Brief at 1; 28 U.S.C. § 2639(a)(1).  As Pomeroy correctly notes, however, the presumption of correctness is irrelevant at the summary judgment stage, where – by definition – there is assertedly no dispute as to any material fact.  *See, e.g.*, <u>Goodman Mfg., L.P. v. United States</u>, 69 F.3d 505, 508 (Fed. Cir. 1995) (holding that, "[b]ecause there was no factual dispute between the parties, the presumption of correctness is not relevant"); *see generally* <u>Universal Elec. Inc. v. United States</u>, 112 F.3d 488, 491-93 (Fed. Cir. 1997); <u>Rollerblade, Inc. v. United States</u>, 112 F.3d 481, 483-84 (Fed. Cir. 1997).

Here, Note 1(e) to Chapter 70 of the HTSUS specifically provides that Chapter 70 does not

cover lamps or lighting fittings or the other items included under heading 9405.  *See* Chapter Note

1(e) to Chapter 70, HTSUS.[16]  Similarly, Explanatory Note 94.03 expressly excludes "[s]tandard

---

[16]As explained in <u>Pomeroy II</u>, if the subject merchandise here at issue is properly classifiable under heading 9405, its classification under heading 7013 is barred as a matter of law by Chapter Note 1(e), which provides, in relevant part:

> 1.    This chapter does not cover:
>       . . . .
>
>       (e)    *Lamps or lighting fittings*, illuminated signs, illuminated name-plates or the like, having a permanently fixed light source, or parts thereof of heading 9405;

Chapter Note 1(e) to Chapter 70 (emphasis added); *see* Pl.'s Brief at 8; Def.'s Brief at 7; *see also* <u>Pomeroy II</u>, 32 CIT at 540, 540 n.15, 559 F. Supp. 2d at 1388, 1388-89 n.15 (2008).  Unlike Explanatory Notes (which are persuasive, but not binding), Chapter Notes are mandatory and conclusive statutory law for all purposes.  *See*, *e.g.*, <u>Degussa Corp. v. United States</u>, 508 F.3d 1044, 1047 (Fed. Cir. 2007) (noting that "chapter notes are integral parts of the HTSUS, and have the same legal force as the text of the headings," in contrast to "[e]xplanatory notes," which "are not legally binding but may be consulted for guidance and are generally indicative of the proper interpretation of a tariff provision") (citation omitted); <u>Libas, Ltd. v. United States</u>, 193 F.3d 1361, 1364 (Fed. Cir. 1999) (describing chapter notes as "statutory language" of HTSUS).

In addition, pursuant to Explanatory Note 70.13, "Lamps and lighting fittings and parts thereof of heading 94.05" are expressly excluded from classification as "Glassware of a kind used for . . . indoor decoration" under heading 7013.  *See* Explanatory Note 70.13.

The Explanatory Notes function as an interpretative supplement to the HTSUS, and are "generally indicative of . . . [its] proper interpretation." <u>Lynteq, Inc. v. United States</u>, 976 F.2d 693, 699 (Fed. Cir. 1992) (*quoting* H.R. Conf. Rep. No. 100-576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582).  They are the official interpretation of the scope of the Harmonized Commodity Description and Coding System (which served as the basis of the HTSUS) as viewed by the Customs Cooperation Council (now known as the World Customs Organization), the international institution that drafted the international nomenclature.  Thus, while the Explanatory Notes "do not constitute controlling legislative history," they "nonetheless are intended to clarify the scope of HTSUS [provisions] and offer guidance in interpreting [those provisions]." <u>Mita Copystar Am. v. United States</u>, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (*citing* <u>Lynteq</u>, 976 F.2d at 699).  *See also* <u>Len-Ron Mfg. Co. v. United States</u>, 334 F.3d 1304, 1309 (Fed. Cir. 2003);

lamps and other lamps and lighting fittings" from classification under heading 9403.  *See* World

Customs Organization, Harmonized Commodity Description and Coding System: Explanatory Note

94.03 (2d ed. 1996).  Thus, if the merchandise at issue is classifiable as "Lamps and lighting fittings"

under heading 9405, it is not classifiable as either decorative glassware under heading 7013 or

"Other furniture and parts thereof" under heading 9403.   Accordingly, the analysis of the

classification of all of the articles in question logically must begin with heading 9405.

Where classification is not resolved by GRI 1, the analysis proceeds to subsequent GRIs.

GRI 2 instructs, in relevant part, that "[a]ny reference in a heading to an article shall be taken to

include a reference to that article incomplete . . . , provided that, as entered, the incomplete . . .

article has the essential character of the complete . . . article."  GRI 2(a), HTSUS.  Further, any

reference to "goods of a given material or substance shall be taken to include a reference to goods

consisting wholly or partly of such material or substance" and "[t]he classification of goods

consisting of more than one material or substance shall be according to the principles of [GRI 3]."

GRI 2(b), HTSUS.  Pursuant to GRI 3, more "specific" heading descriptions "shall be preferred to

headings providing a more general description."  GRI 3(a), HTSUS.  "However, when two or more

headings each refer to part only of the materials or substances contained in mixed or composite

goods . . . , those headings are to be regarded as equally specific," and goods covered by such

headings are to be "classified as if they consisted of the material or component which gives them

their essential character."  GRI 3(a)-(b), HTSUS.

---

Rollerblade, 112 F.3d at 486 n.3 (Fed. Cir. 1997).

All citations herein are to the second edition of the Explanatory Notes, published in 1996.

As detailed below, the three groups of merchandise here in dispute are properly classified under heading 7013. The Pillar Plates are properly classified under HTSUS subheadings 7013.99.50 or 7013.99.80 through a straightforward application of GRI 1. The Floor Articles are properly classified under subheading 7013.99.90, through the application of GRI 3(b) and its "essential character" analysis. Finally, the Wall Articles are classifiable through a similar GRI 3(b) analysis under subheading 7013.99.50.

## A. Heading 9405

Pomeroy maintains that all items in dispute are properly classifiable under heading 9405, which covers "Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included." Heading 9405, HTSUS.[17] As an *eo nomine* tariff provision,[18] heading 9405 generally encompasses all forms of the article. *See*, *e.g.*, Pomeroy II, 32 CIT at 549, 559 F. Supp. 2d at 1396 (concluding that heading 9405 "is clearly identifiable as an *eo nomine* provision," not a principal use provision); Pl.'s Brief at 6, 15, 16 (stating that heading 9405 is *eo nomine* provision); Def.'s Reply Brief at 5 (same);

---

[17]Pomeroy does not argue that the articles at issue fit within the definition of any terms other than "Lamps and lighting fittings . . . and parts thereof" under heading 9405. Heading 9405, HTSUS. That is, Pomeroy does not contend that any of the articles fit within the meaning of the terms "searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source." Heading 9405, HTSUS; *see generally* Pl.'s Brief; Pl.'s Reply Brief.

[18]An *eo nomine* provision is "one which describes [a] commodity by a specific name, usually one well known to commerce." Casio, Inc. v. United States, 73 F.3d 1095, 1097 (Fed. Cir. 1996) (*quoting* Black's Law Dictionary (6th ed. 1990)).

Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (explaining that *eo nomine*

provisions ordinarily cover all forms of named article).[19]

Explanatory Note 94.05 defines "Lamps and lighting fittings" to include items that "use any

source of light," including "candles." *See* Explanatory Note 94.05. The Explanatory Note further

specifies that heading 9405 "covers in particular . . . [c]andelabra" and "candlesticks," in addition

to "candle brackets" (such as those used on pianos). *See* Explanatory Note 94.05. Heading 9405

---

[19]Although Pomeroy repeatedly and unequivocally states that heading 9405 is an *eo nomine* provision, Pomeroy elsewhere argues for application of the Carborundum factors in the context of a "principal use" analysis, devoting much ink to assertions concerning matters such as the design, marketing, and sales of its merchandise. *See, e.g.*, Pl.'s Brief at 9 (representing that Floor Articles were "designed . . . as candleholders for use in homes, or offices, in doors or out of doors"), 18 (asserting that Wall Articles "were sold in the candle or lighting section of the stores, and were always advertised as candleholders"), 20 (describing in detail ways in which Pillar Plates were marketed); Pl.'s Reply Brief at 5-6 (discussing nature of packaging for Wall Articles and Pillar Plates), 13 (claiming merchandise to be classifiable "based upon the intent of their designer and the manner in which said articles are marketed and sold"); *see generally* Pl.'s Brief at 4-5, 21-23 (asserting that Pomeroy designed, marketed, and sold its merchandise as candle holders); Pl.'s Reply Brief at 5-7 (same); United States v. Carborundum Co., 536 F.2d 373, 377 (CCPA 1976).

But Pomeroy's reliance on the Carborundum factors is misplaced. As the Court of Appeals recently noted, the Carborundum factors are "typically used to establish whether merchandise falls within a particular class or kind for purposes of a principal use analysis." BenQ America Corp. v. United States, 646 F.3d 1371, 1377 (Fed. Cir. 2011). Because (like the other two headings at issue) heading 9405 is an *eo nomine* provision, the "principal use" analysis and the Carborundum factors have no application here. *See* Pomeroy II, 32 CIT at 549, 559 F. Supp. 2d at 1396; Def.'s Reply Brief at 7 (explaining that "principal use factors do not govern whether a good is encompassed by an *eo nomine* term").

The Government also notes that, elsewhere in Pomeroy's briefs, Pomeroy occasionally seems to lapse into an "actual use" analysis. *See* Def.'s Brief at 13 n.11 (referring to Pl.'s Brief at Exh. 1). But an "actual use" analysis is no more appropriate here than a "principal use" analysis. Heading 9405 is not an "actual use" provision. There is nothing to suggest that heading 9405 is "a tariff classification controlled by the actual use to which the imported goods are put in the United States"; nor has Pomeroy proffered any evidence that it has satisfied the requirements to establish "actual use." *See* Def.'s Brief at 13 n.11 (*quoting* Additional U.S. Rule of Interpretation 1(b)).

thus covers not only "*Electrical* lamps and lighting fittings," but also lamps and lighting fittings of

other types – including "*Non-electrical lamps* and lighting fittings," such as those specified in the

Explanatory Note.  *See* Explanatory Note 94.05 (emphases added); Subheading 9405.50, HTSUS

(emphasis added); Def.'s Brief at 13 (noting that heading 9405 covers candle holders).

Dictionary definitions further emphasize the "illumination" focus of heading 9405 and clarify

other relevant terms in Explanatory Note 94.05.[20]  A "lamp" is defined as "any of various devices

for producing light or sometimes heat."  *See* Merriam-Webster's Collegiate Dictionary (10th ed.

1997).  "Lighting" is synonymous with "illumination," and "fitting" is defined as "a small often

standardized part," *e.g.*, an electrical fitting.  *See* Merriam-Webster's Collegiate Dictionary (10th ed.

1997).

Dictionary definitions are similarly instructive in interpreting terms such as "candlestick"

and "candelabra."  One dictionary defines "candlestick" as "a holder with a socket for a candle" and

defines "candelabra" as "a branched candlestick or lamp with several lamps."  *See* Merriam-

Webster's Collegiate Dictionary (10th ed. 1997).  Another dictionary defines a "candlestick" as "a

holder with a cup or spike for a candle" and a "candelabrum" as "a large decorative candlestick

having several arms or branches."  The American Heritage Dictionary of the English Language (4th

ed. 2000).  It is particularly telling that Pomeroy consistently and uniformly refers to the articles in

dispute as "candle holders."  *See*, *e.g.*, Pl.'s Brief at 4, 8, 9, 17, 21, 23; Pl.'s Reply Brief at 2, 5, 6,

---

[20]For guidance in determining the scope of the terms in a heading, "a court may consult
dictionaries, scientific authorities, and other reliable information sources and lexicographic and other
materials."  Rocknel Fastener, Inc. v. United States, 267 F.3d 1354, 1356 (Fed. Cir. 2001); *see also*
Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (noting that "[a] court may
rely upon its own understanding of terms used").

7, 16, 23, 24, 15. Yet the dictionary definition of "candleholder" is "candlestick"; and, as noted

above, the definition of "candlestick" is "a holder with a socket for a candle." *See* Merriam-

Webster's Collegiate Dictionary (10th ed. 1997). These definitions, with their references to a

"socket" and a "cup or spike," indicate that a basic function of a candle holder is to hold a candle

securely.[21] As the Government puts it, "[i]t is the presence of a securely held candle that permits

---

[21]Pomeroy makes no argument that, if its merchandise cannot be classified under heading 9405 pursuant to GRI 1, it might be so classified pursuant to GRI 2(a). *See* Pl.'s Brief at 6 (arguing only that merchandise is classifiable under heading 9405 pursuant to straightforward application of GRI 1). As the Government explains, such an argument would get no traction in any event. *See* Def.'s Brief at 14-15; *see generally* Pomeroy II, 32 CIT at 537-40, 559 F. Supp. 2d at 1386-88.

GRI 2(a) provides, in relevant part, that "[a]ny reference in a heading to an article shall be taken to include a reference to that article incomplete . . . , provided that, as entered, the incomplete . . . article has the essential character of the complete . . . article." GRI 2(a) (emphases added). Accordingly, as the Government notes, the merchandise classifiable under heading 9405 includes not only "complete" merchandise, but also "incomplete" merchandise – provided that such "incomplete" merchandise has the "essential character" of the complete merchandise that is classifiable under heading 9405. *See* Def.'s Brief at 15.

Although both GRI 2(a) and GRI 3(b) employ the term "essential character," they do so in very different contexts; and there is little authority as to the term's meaning in the context of GRI 2(a). *See* Pomeroy II, 32 CIT at 539 n.14, 559 F. Supp. 2d at 1387 n.14. But that lack of guidance is of little moment here. By any measure, the merchandise at issue here lacks the "essential character" of "complete" merchandise that falls within the terms of heading 9405.

The Government considers whether – absent candles – the articles in question here can be classified under heading 9405 as incomplete articles possessing the essential character of a completed article (*i.e.*, a candle holder) under GRI 2(a). *See* Def.'s Brief at 15. The Government concludes that the imported articles do not possess – under GRI 2(a) – the essential character of a candle holder classifiable under heading 9405, which is to provide illumination by securely holding a candle. *See* Def.'s Brief at 15. The Government emphasizes that none of the articles incorporate any special design features to securely hold a candle, as do candelabras, candle sticks, and candle brackets. *See id.* Because the articles at issue do not incorporate any design characteristics that would permit them to function like the candelabras, candle sticks, and candle brackets specified in the Explanatory Notes to heading 9405, the Government concludes that the articles could not be classified under heading 9405 as incomplete lamps or lighting fixtures pursuant to GRI 2(a). *Id.*

[an] article to satisfy the plain language purpose of articles under Heading 9405: to provide illumination."  Def.'s Brief at 14.

In determining whether the articles in question fall within the scope of heading 9405, it is axiomatic that they must be classified in their condition as imported.  *See*, *e.g.*, <u>BASF Corp. v. United States</u>, 497 F.3d 1309, 1314 (Fed. Cir. 2007) (*citing* <u>United States v. Citroen</u>, 223 U.S. 407, 414-15 (1912)).  At the time of importation, none of the articles here contained candles.  Therefore, at the time of importation, none of the articles were capable of providing illumination, as contemplated by heading 9405.

Nor do any of the articles have physical features that are specifically designed to hold a candle in place – no "sockets," "cups," or "spikes," or anything else remotely akin to the specific features of the items (candelabra, candlesticks, and candle brackets) listed in the Explanatory Notes to heading 9405.  *See generally* Def.'s Brief at 7, 15; Def.'s Reply Brief at 6-7.[22]  Pomeroy's assertion that candles "can be held by the articles at issue without the benefit of such features" is unavailing.  *See* Pl.'s Reply Brief at 5; *see also* Pl.'s Reply Brief at 2 (arguing that "the pillar candles used in conjunction with the articles in this case may be supported by any flat surface, without the need for spikes, sockets, inserts or raised edges").  The Pillar Plates may be able to "hold" a candle – or "support [a candle] in a particular position or keep [a candle] from falling or moving." Merriam-Webster's Collegiate Dictionary (10th ed. 1997) (defining "hold").  However, the term "candle holder" is synonymous with "candlestick" – an article that not only holds a candle, but holds

---

[22]The articles in dispute are thus distinguishable from the Metropol articles, which have such a socket and raised edge feature and which the parties stipulated as classifiable under heading 9405. *See* section I, *supra*.

it securely.  If it were otherwise, *any* relatively flat, non-slippery object could at least theoretically be referred to as a "candle holder" for flat-bottomed candles, and thus would be *prima facie* classifiable under heading 9405 – a patently absurd result.

The items properly classified in heading 9405 are those that are capable of providing illumination and those whose design incorporates features comparable to those of candelabra, candlesticks, and candle brackets.  As such, the articles here at issue are not *prima facie* classifiable under heading 9405.

## B.  Heading 9403

In its reply brief, Pomeroy claims for the first time that – in the event that they are determined not to be classifiable as "Lamps and lighting fittings" under heading 9405 – the Floor Articles and the Wall Articles are alternatively classifiable as "Other furniture and parts thereof" under heading 9403.  *See* Heading 9405, HTSUS; Heading 9403, HTSUS; Pl.'s Reply Brief at 16-24, 25.  The Government cries foul, arguing that Pomeroy waived any such claims by not raising them in its opening brief.  *See* Def.'s Reply Brief at 9-10.  It is "well established that arguments not raised in the opening brief are waived."  SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1319-20 (Fed. Cir. 2006); *see also* Novosteel SA v. United States, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002) (same).  The doctrine of waiver has even greater force where, as here, it is a new claim (rather than a new argument) that is at issue.  Pomeroy contends that Jarvis Clark nevertheless mandates consideration of the heading.  *See* Pl.'s Reply Brief at 19.  There is no need to resolve either argument, however, because Pomeroy's claim for classification under heading 9403 cannot succeed on the merits.  *See generally* Def.'s Reply Brief at 5, 9-14.

As a threshold matter, Note 2 to Chapter 94 limits classification under the headings of that chapter to articles that are "designed for placing on the floor or ground," subject only to certain select exceptions that are not relevant here.  *See* Chapter Note 2 to Chapter 94, HTSUS; Def.'s Reply Brief at 13.  Pomeroy's Wall Articles are therefore, by definition, expressly excluded from classification under heading 9403.

Even if the Wall Articles were not expressly excluded from classification under heading 9403, they cannot be so classified, just as the Floor Articles cannot be so classified, because they are not used "mainly with a utilitarian purpose."  *See* Def.'s Reply Brief at 14.  In relevant part, the General Explanatory Notes to Chapter 94 state:

> For purposes of this Chapter, the term "furniture" means: (A) Any "movable" articles (*not included* under other more specific headings of the Nomenclature), which have the essential characteristic that they are constructed for placing on the floor or ground and which are used, *mainly with a utilitarian purpose*, to equip private dwellings, hotels, theatres, cinemas, offices, churches, schools, cafes, restaurants, laboratories, hospitals, dentists' surgeries, etc., or ships, aircraft, railway coaches, motor vehicles, caravan-trailers or similar means of transport.

General Explanatory Notes, Chapter 94 (second emphasis added).  The Explanatory Notes for heading 9403 further state that the heading "includes furniture for: (1) Private dwellings, hotels, etc., such as: cabinets, linen chests, bread chests, log chests; chests of drawers, tallboys; pedestals, plant stands; dressing-tables; pedestal tables; wardrobes, linen presses; hall stands, umbrella stands; side-boards, dressers, cupboards; food-safes; pedestal ashtrays; music cabinets, music stands or desks; play-pens; [and] serving trolleys . . . ."  Explanatory Note 94.03.

The Explanatory Note to Chapter 94 emphasizes that items classified as furniture are those "mainly with a utilitarian purpose."  "Utilitarian" is defined as "of, pertaining to, consisting in

utility; aiming at utility, as distinguished from beauty, ornament." *See* Webster's New International Dictionary (2d ed. 1953). The nature of the items listed in the Explanatory Note for heading 9403 further underscores the seminal notion of utility.

The Government points to Furniture Import as an illustration of the longstanding trend of courts, even under prior tariff systems, to construe "furniture" as limited to articles that are "for the use, convenience, and comfort of the house dweller and not subsidiary articles designed for ornamentation alone." Def.'s Reply Brief at 11 (*citing* Furniture Import Corp. v. United States, 56 Cust. Ct. 125, 133 (1966)); *see also* Sprouse Reitz & Co. v. United States, 67 Cust. Ct. 209 (1971) (discussing the distinction between utilitarian and decorative articles for purposes of determining whether goods fall within common meaning or TSUS headnote definition of "furniture"). The Furniture Import court observed that "furniture" "embraces articles of utility which are designed for the use, convenience, and comfort of the dweller in a house," as distinguished from articles that are "subsidiary adjuncts and appendages designed for the ornamentation of a dwelling or business place, or which are of comparatively minor importance so far as use, comfort and convenience are concerned." Furniture Import Corp., 56 Cust. Ct. at 132.

The court in Furniture Import considered the classification of a variety of items. Of particular relevance here is that court's analysis of sconces that were designed to hold either plants or wax candles. The court concluded that the sconces were not classifiable as "furniture" under the applicable tariff system, because the sconces were ornamental rather than utilitarian. *See* Furniture Import Corp., 56 Cust. Ct. at 133, 136. The mere fact that the sconces were designed to hold other decorative articles – *i.e.*, plants or candles – did not convert the sconces from ornamental articles

into utilitarian ones.

By the same token, the Floor Articles and Wall Articles at issue here are not "mainly . . . utilitarian" in nature, because they are not "aiming at utility as distinguished from beauty, ornament." *See* Webster's New International Dictionary (2d ed. 1953) (definition of "utilitarian"). As with the sconces in Furniture Import, the mere fact that the Floor Articles and Wall Articles here can be used to hold other decorative items does not transform the Floor Articles and Wall Articles into utilitarian articles classifiable as "furniture." *See* Furniture Import Corp., 56 Cust. Ct. at 133, 136. Pomeroy seeks to make much of certain language from Furniture Import that was quoted in Sprouse: "None of the cases since that time [*i.e.*, the early twentieth century] have held that articles which are manifestly ornamental only, as distinguished from ones useful to hold ornaments, are furniture." *See* Pl.'s Reply Brief at 23 (*quoting* Sprouse, 67 Cust. Ct. at 218). Pomeroy apparently contends that holding ornaments suffices to render an object "furniture." But Pomeroy misconstrues the quote. *See generally* Def.'s Reply Brief at 11-12. Whatever that language may mean, it can only be read to be consistent with the holding in Furniture Import – that the sconces there at issue, although useful to hold ornamental object such as plants and candles, could not be classified as "furniture."

In a further attempt to support its contention that the Floor Articles and Wall Articles are classifiable as "furniture," Pomeroy invokes a Customs ruling letter (specifically, NY N087135, dated December 18, 2009). *See* Pl.'s Reply Brief at 21-22. But that ruling letter is inapposite. *See generally* Def.'s Reply Brief at 12-13. In the ruling letter, Customs noted that the imported articles there in question contained spikes for impaling and securing pumpkins and jack-o-lanterns. It was

the presence of the spike that rendered those articles primarily utilitarian.  The ruling letter referred

to the Explanatory Notes to Chapter 94, and observed that heading 9403 includes furniture for

"Private dwellings, hotels, etc. such as: cabinets, linen chests, bread chests, log chests . . . pedestals,

*plant stands . . . .* " *See* NY N087135 (emphasis in original).  Customs determined that the articles

in question were "pumpkin stands," and concluded that "[s]uch utilitarian articles are considered

furniture."  *Id*.

      As the Government argues, the Floor Articles and Wall Articles at issue here are not like the

pumpkin stands in the Customs ruling letter.  Among other things, they are conspicuously missing

spikes that would render them useful for impaling and securing an item.  *See* Def.'s Reply Brief at

13.  Because the Floor Articles and Wall Articles – much like the sconces in <u>Furniture Import</u> – are

not used "mainly with a utilitarian purpose" (and are instead more decorative and ornamental in

nature), they are not *prima facie* classifiable as furniture and Pomeroy's claim to classification under

heading 9403 must fail.

## C.  <u>Heading 7013</u>

      The third of the three competing headings is the tariff provision under which Customs

classified the merchandise in dispute – heading 7013, which covers "Glassware of a kind used for

table, kitchen, toilet, office, indoor decoration or similar purposes," with certain exceptions not

relevant here.  *See* Heading 7013, HTSUS.  As discussed below, each of the articles at issue is either

wholly made of glass (*i.e.*, the Pillar Plates) or is a composite article (*i.e.*, the Floor Articles and the

Wall Articles) where the glass vessel is the component that imparts its "essential character" to the

merchandise.  As such, all the articles were properly classified under heading 7013.[23]

### 1.  The Pillar Plates

The Pillar Plates, which consist only of glass, with three glass feet to allow for display on a table or other similar surface, plainly fall within the scope of "Glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes," and thus were properly classified under heading 7013.  *See generally* Heading 7013, HTSUS; Def.'s Brief at 7, 16.

Classification at the subheading level is determined by the value of the glassware items. Subheadings 7013.99.50 and 7013.99.80 are differentiated by the value of the glassware items covered by the provision.  Subheading 7013.99.50 covers "Other glassware" valued over $0.30 but not over $3 each, while subheading 7013.99.80 covers "Other glassware" valued over $3 but not over $5 each.  *See* Subheading 7013.99.50, HTSUS; Subheading 7013.99.80, HTSUS.  The Pillar Plates are properly classified under these "basket" subheadings because they do not fall within any of the other subheadings under heading 7013.

The vast majority of the Pillar Plates were properly classified and liquidated.  However, in certain entries, the Large Frosted Pillar Plate (article # 687471) was mistakenly classified under subheading 7013.39.50, which covers "Glassware *of a kind used for table . . . or kitchen purposes*

---

[23]Highlighting the fact that one of the Floor Articles at issue here (specifically, the Medium Romano Floor Candle) was the subject of Pomeroy I, where it was classified under heading 7013, the Government seeks to invoke *stare decisis* to claim that the article must be so classified in this action.  *See* Pomeroy I, 26 CIT at 634, 246 F. Supp. 2d at 1296; Def.'s Brief at 7-8, 20-21, 24-25; Def.'s Reply Brief at 4, 8-9.  For its part, Pomeroy vigorously contests the applicability of the doctrine under the circumstances presented here.  *See* Pl.'s Reply Brief at 7-16.  As discussed below, the Government prevails on the merits as to the classification under heading 7013 of all Floor Articles, including the Medium Romano Floor Candle.  There is therefore no need to parse the parties' respective positions on *stare decisis*.

other than that of glass-ceramics . . . Valued over $3 but not over $5 each." Subheading 7013.39.50,

HTSUS (emphasis added).  Although the rate of duty is the same (9%) for subheadings 7013.39.50

and 7013.99.80, Customs must reliquidate those articles under the proper subheading – subheading

7013.99.80.

Invoices show that all of the remaining Pillar Plate entries indeed fall within the limits of the

subheadings' value ranges.  Accordingly, except as noted above, all other Pillar Plates shall remain

classified as assessed by Customs.

### 2.  The Floor Articles and The Wall Articles

Assuming, for purposes of analysis, that the metal components of the Floor Articles and the

Wall Articles preclude their classification as "Glassware of a kind used for table, kitchen, toilet,

office, indoor decoration or similar purposes" under heading 7013 pursuant to GRI 1, the

classification analysis proceeds to GRI 2.  *See* Heading 7013, HTSUS.  GRI 2(a), which addresses

incomplete or unfinished goods, is not relevant here.  *See* GRI 2(a), HTSUS.  GRI 2(b) provides

that, if the goods consist of two or more materials and are prima facie classifiable under two

provisions, classification is governed by GRI 3.  *See* GRI 2(b), HTSUS.  Here, the Floor Articles

and the Wall Articles each consist of a glass component and a metal component, rendering them

*prima facie* classifiable under both heading 7013 and heading 8306 (which covers "statuettes and

other ornaments, of base metal").  *See generally* Pomeroy I, 26 CIT at 628-29, 246 F. Supp. 2d at

1291; Heading 7013, HTSUS; Heading 8306, HTSUS.  Analysis pursuant to GRI 2(b) and GRI 3

is therefore necessary.

Under GRI 3(a), because the competing headings "each refer to a part of the composite

article at issue, the exception to GRI 3(a)'s rule of 'relative specificity' applies, and the two headings

are deemed equally specific."  Pomeroy I, 26 CIT at 630, 246 F. Supp. 2d at 1293.  The analysis

therefore proceeds to GRI 3(b) and the "essential character" test.  *Id.*  GRI 3(b) provides:  "Mixtures,

composite goods consisting of different materials or made up of different components, and goods

put up in sets for retail sale, which cannot be classified by reference to [GRI] 3(a), shall be classified

as if they consisted of the material or component which gives them their essential character, insofar

as this criterion is applicable."  *See* GRI 3(b), HTSUS.  Explanatory Note (IX) to GRI 3(b)

elaborates that, under this rule, composite goods include goods whose components have been

adapted to one another, are mutually complementary, and form a whole that would not normally be

offered for sale separately.  *See* Explanatory Notes, GRI 3(b), at (IX).  Explanatory Note (VIII) to

GRI 3(b) provides further guidance:  "The factor which determines essential character will vary as

between different kinds of goods.  It may, for example, be determined by the nature of the material

or component, its bulk, quantity, weight or value or by the role of a constituent material in relation

to the use of the goods."  *See* Explanatory Notes, GRI 3(b), at (VIII).

      Analyzing the Floor Articles at the GRI 3(b) level reveals that each of the articles is a

composite of metal (iron) and a clear glass vessel which can be used to hold and display a variety

of items.  *See* Pl.'s Exhs. 2-6 (physical samples and photographs of Floor Articles).  The metal

pedestal cannot hold other items without first holding the glass vessel.  *Id*.  The function of each

article as a whole is to hold and display an object or objects; and the glass vessel is the component

that gives the article its ability to serve that function.  Ruling on the classification of the Medium

Romano Floor Lamp (one of the articles at issue here), Pomeroy I held exactly that:

> The pedestal, while complementary to the glass vessel, is subsidiary to it in the context of the merchandise as an integral whole.  The pedestal serves to elevate the glass vessel, and to hold it upright.  But it is the glass vessel which is the focal point of the article, and which performs the article's overall function – holding a candle, flowers, a plant, a wine bottle, or some similar object.

Pomeroy I, 26 CIT at 629, 246 F. Supp. 2d at 1292.  Thus, the essential character of the Floor Articles is imparted by the glass vessels, which can hold – and, because they are clear, also display – any number of items.  Because it is the glass vessel that imparts the essential character to each of the Floor Articles, those articles all were properly classified under heading 7013.

Classification at the subheading level, once again, is determined by value.  Review of the invoices indicates that all of the entries fall within the value range (*i.e.*, over $5 each) specified for subheading 7013.99.90, "Glassware of a kind used for . . . indoor decoration," dutiable at the rate of 4.3%.  Accordingly, the Floor Articles shall remain classified as assessed by Customs.

Like the Floor Articles, the Wall Articles too must be subjected to a GRI 3(b) analysis to determine their essential character.  Each of the Wall Articles consists of two components – an iron wall mounting and a glass vessel.  *See* Pl.'s Exhs. 8-9 (boxes depicting the Wall Articles).  The metal wall mounting is specially designed to hold the accompanying glass vessel as an insert.  *See id*.  Like the Floor Articles, the function of each of the Wall Articles as a whole is to hold and display an object or objects; and it is the glass vessel that is the component that gives the article as a whole its ability to serve that function.  *See id*.  Thus, much as the glass components of the Floor Articles imparted their essential character to those articles as a whole, so too the essential character of the Wall Articles is imparted by the glass vessels.  The Wall Articles therefore were also properly classified under heading 7013.

Court No. 02-00150                                                                              Page 30

Classification at the subheading level, once again, is determined by value.  Review of the invoices indicates that all of the relevant entries fall within the specified value range (over $0.30 but not over $3 each) for subheading 7013.99.50, "Glassware of a kind used for . . . indoor decoration," dutiable at the rate of 18%.  Accordingly, Customs' classifications of the Wall Articles are sustained.

## IV.  <u>Conclusion</u>

For all the reasons detailed above, Pomeroy's Motion for Summary Judgment is denied, and the Government's Cross-Motion is granted.  As detailed above, the Pillar Plates were properly classified under HTSUS subheading 7013.99.50 or subheading 7013.99.80, depending on the value of the articles; the Floor Articles were properly classified under subheading 7013.99.90; and the Wall Articles were properly classified  under subheading 7013.99.50.  Further, the articles as to which the parties have stipulated shall be reclassified under the agreed-upon tariff provisions.

Judgment will enter accordingly.

 /s/ Delissa A. Ridgway
Delissa A. Ridgway, Judge

Decided:  January 28, 2013
          New York, New York